UNITE0D STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARY BOYKE,

                  Plaintiff,

      v.                                      01-CV-0290

SUPERIOR CREDIT CORP.;
ROBERT TOUSAW, Individually and
as President and owner of Superior
Credit Corp.,

                  Defendants,

---

| APPEARANCES: | OF COUNSEL: |
|---|---|
| SATTLER & ANDREWS, LLP<br>Attorneys for Plaintiff<br>217 South Salina Street<br>6th Floor<br>Syracuse, NY 13202 | ROSS P. ANDREWS, ESQ. |
| MENTER, RUDIN &<br>TRIVELPIECE, PC<br>Attorneys for Defendants<br>500 South Salina Street<br>Suite 500<br>Syracuse, NY 13202 | STEVEN B. ALDERMAN, ESQ. |

HOWARD G. MUNSON, SR. J.

---

### MEMORANDUM DECISION AND ORDER

On February 27, 2001, plaintiff, Mary Boyke, instituted this lawsuit against defendant, Superior Credit Corporation. It is founded on defendant's failure to pay plaintiff remuneration for the overtime work she performed for defendant as its employee from

January 13, 1997 to September 28, 2006.  The complaint alleges violations of the federal Fair Labor Standards Act ("FLSA") 29 U.S.C. § 201, *et seq.,* and New York State Labor Law  §650 *et seq.* and  §190 *et seq.*  Plaintiff sought  to recover unpaid overtime salary, liquidated damages, prejudgment interest under §5001 of the  New York Civil Practice Law and Rules statute, attorneys' fees, costs and disbursements.  It is uncontested that the defendant in this action was an employer under both  federal and state laws during the period the events in question took place.

Supplemental jurisdiction is provided by 28 U.S.C. 1367 whenever a state law claim is part of the same case or controversy as the claim over which the federal court has original jurisdiction. This criterion fits the current state law claims. Promisel v. First American Artificial Flowers, 943 F.2d 251 (2d Cir.1991), *cert. denied* 502 U.S. 1060, 112 S. Ct. 939, 117 L. Ed.2d 110 (1992). Duplicative litigation at multiple levels of government involving the same facts are contrary to the objectives of the Supplemental Jurisdiction Act and the public interest.

Under the FLSA, it is unlawful for any person to violate the minimum wage, overtime, and record keeping provisions of that statute.  Employees who are "engaged in the production of goods for commerce" are entitled to overtime compensation for working more than forty hours in a week. See id. § 207(a).The statute further states that an employer who violates the statute's overtime compensation provision is liable for any unpaid overtime compensation and "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The statute's provisions are also applicable to work performed away from the premises or job site, or even at home. 29 Code of Federal Regulations § 785.12.

Defendant did not answer the complaint.  Following the entry of default by the Court Clerk on March 5, 2001, plaintiff moved for a default judgment.  Defendant's counsel did not enter opposition to this motion, nor did anyone make an appearance on defendant's behalf on the date the motion was heard.  Hirsch v. Innovation International, Inc., 1992 WL 316143 at *2 (S.D.N.Y Oct. 19, 1992)(holding that "[the defendant's] default is crystal clear--it does not even oppose this motion").

On July 5, 2001, looking at the pleaded factual allegations of the complaint, and finding them well pleaded, this court found that defendant's failure to answer the complaint or appear at the default motion hearing was wilful and granted plaintiff's unopposed motion for a default judgment.  Only "in very narrow, exceptional circumstances" may a court find an allegation not "well pleaded." Trans World Airlines Inc. v. Hughes, 449 F.2d 51 (2d Cir.1971), rev'd on other grounds, 409 U.S. 363, 93 S. Ct. 647, 34 L. Ed.2d 577 (1973).

The Supreme Court has interpreted the term "willful" as used in this statute to mean "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Company, 486 U.S. 128, 133, 108 S. Ct. 1677, 100 L. Ed.2d 115 (1988).  Wilfulness does not require intent. Majchrzak v. Chrysler Credit Corp., 537 F. Supp. 33, 36 (E.D. Mich.1981).

By virtue of defendant's default, the allegations in the complaint filed in the instant action must be accepted as true.  Cotton v. Sloan, 4 F.3d 176, 181 (2d Cir. 1993).  At the damage hearing, plaintiff had  no obligation to introduce any evidence whatever in support of the allegations of her complaint.  It  must be presumed, therefore, that plaintiff has established all theories of recovery alleged in her complaint. Id.  Although a defaulted

3

defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded.  At the most, all that defendant can do is question the extent of the damages suffered by the plaintiff.  TransWorld Airline, Inc. v. Hughes, 449 F.2d at 72.

While at times the repercussions of default may seem harsh, "[t]he purpose behind default judgments ... is to allow district courts to manage their dockets efficiently and effectively." Merrill Lynch Mortgage Corp. v. Narayan, 908 F.2d 246, 253 (7th Cir.1990). "If we were to allow a defaulting party to contest liability and interpose general set-offs at the damages inquest, we would eviscerate the rule governing defaults, and for all practical purposes deprive the district courts of this important case management tool." Greyhound Exhibit Group v. E.U.L.U. Realty, 973 F.2d 155, 161 (2d Cir. 1992), cert. denied, 506 U.S. 1080, 113 S. Ct. 1049, 122 L. Ed.2d 357 (1993).  There was a time to controvert plaintiff's claims and defendant cannot elect to default and then defend on the merits. It cannot have its cake and eat it to.  Thompson v. Wooster, 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885)

On October 10, 11 and 18, 2001, a hearing was held in this court to ascertain the amount of damages due for unpaid overtime compensation under the Fair Labor Standards Act of 1938, as amended ("FLSA" or "Act"). After careful consideration of the evidence and testimony adduced at the hearing, post-hearing memoranda submitted by the parties, and in light of the entire record in this cause, the court makes the following findings of fact and conclusions of law.

Plaintiff began working for defendant, Superior, a manufactured home mortgage and financing broker, as a Financial Specialist on January 12, 1997.  TR 3-4, 12, 133-34, 139. She acted as a intermediary among the manufactured home dealers, purchasers and financial institutions . TR 25.   Her duties chiefly involved making sure that the paperwork between the parties was in order.  TR 25.  Plaintiff left defendant's employ on September 28, 2000. TR 3-4.

Her work was limited during the first three months she worked for the company, because defendant was subject to a business inhibiting injunction which resulted from a lawsuit instituted by the former partner of Mr. Tousaw.  TR 27, 135-36, 178.  After the injunction was dissolved at the end of march 1997, the work accelerated and intensified throughout the rest of the year.   The work day expanded so quickly due to the feverish and successful solicitation of business and the establishment of a firm customer base. TR 23. At that time plaintiff, Robert Tousaw and Jim Bishop, a Marketing Representative were defendant's only employees. TR 12-14, 138-39.  This meant, that in addition to plaintiff's regular duties, she had to undertake several other clerical functions, like answering the phone, ordering office supplies and filling other clerical needs. TR 13.  This compelled plaintiff to be on the job for considerable number of hours each day, usually arriving at 8:30 a.m. and leaving at 7:00 or 7:30. TR 23, 27-29.  Additionally, approximately four evenings per week, plaintiff brought paperwork home, where she would complete it. TR 29.  This work, customarily, was performed between 9:00 p.m. and 11:00 p.m, after the family dinner, and she had put her son to bed, when the house was quiet.  TR 29, 58, 90-91, 115-16.

By 1998, defendant's business had reached an optimum point. More employees had

5

been hired, which lessened plaintiff's workload, and decreasing her hours worked proportionally. Therefore, plaintiff would get to work at 8:30 a.m., and leave between 6:00 and 6:30 p.m. TR 29. Although plaintiff still took work home for two hour work periods, she would only do so only two or three times per week. TR 30.

The trend off reduction in available work and increase in staff, resulting in fewer hours for plaintiff continued into 1999. TR 30. Consequently, during that span, she worked from 9:00 a.m. to 6:00 p.m. or 6:30 p.m. Similarly, she would only bring work home with her 1 or 2 two nights per week for two hour work sessions. TR 30-31.

The year 2000 brought a further reductio in her hours, working from 9:00 a.m. to 5:00 or 5:30 p.m. TR 31. She stopped her extra effort of bringing work home, began taking lunch breaks rather then working through lunch, and worked no overtime hours in 2000. TR 32, 34. Plaintiff also felt during this time period, that the workplace atmosphere had changed, making her feel uncomfortable and alienated. TR 31-33.

Plaintiff testified that when she brought up the subject of her unpaid overtime wages on four or five occasions in office conversations with Robert Tousaw, he replied "yeah, I know," and after the last conversation, "he kind of chuckled and said it is in contemplation." TR 19 - 22.

Plaintiff's testimony that she worked substantial overtime hours was supported by the testimony of witness Paige Cummings, who was employed as a Finance Coordinator by defendant at that time. TR 282. In responding to a question asking her to elaborate on the number of hours plaintiff worked, Ms. Cummings stated that plaintiff was "always there." TR 286. Ms. Cummings further testified that she and plaintiff would typically arrive at work

between 8:00 and 8:30 a.m., and that plaintiff was customarily still working at 5:30 p.m. when Ms. Cummings left work for the day. TR 284-85.

In the course of her career with defendant plaintiff was an hourly employee. TR 3-4. Her starting pay of $8.50 per hour, was raised to $9.00 per hour on May 30, 1997, and she received no further salary raises thereafter. TR 3-4.  She was also advised in a memo from her work supervisor, Nila Gibson, that she was an "hourly" employee, and never  a "salaried" "employee." TR 15.

Although she worked an indeterminate number of hours, plaintiff never received any payment for overtime, TR 3-4, 17-18, 212-13, 215, she was paid for exactly 40 hours work for each and every one of the close to 200 weeks she was employed by defendant. Def.'s Ex. 6; TR 3-4.

Defendant did not maintain time records for plaintiff, although people  hired after her were allowed to submit weekly time records showing the number of hours worked each day, inexplicitly, plaintiff was never asked to do so.  TR 49-50, 115, 247-48.  She never submitted any written records of the hours she worked, and defendant did not record the hours she worked in any other manner.  Def's Ex. 6; TR 227.

Plaintiff testified that she worked a substantial amount of overtime hours, but she was not relying on her memory alone or that of witness, Paige Cummings. . She bases her claim on her memory of her typical work schedule, as well as contemporaneous written records she kept in personal calendars.  Pl's. Ex. 2-5, TR 34-39, 71-72.  While these records are not complete because the excessive number of hours she was working in 1997 prevented the keeping of a written record, they furnish documentary evidence, recorded

contemporaneously of the specific times plaintiff arrived and departed work on certain dates. The calenders also show those times plaintiff worked overtime, the number of files she worked on at home, as well as the time she was late, left early, took a lunch break, or was absent altogether.  Pl's. Ex. 2-5, TR 36.

Robert Tousaw, defendant's president and owner of defendant, testified that plaintiff, worked few, if any, overtime hours, based on his recollection, and his company's records were accurate in showing that plaintiff worked exactly 40 hours for each of the approximately 200 weeks she was in defendant's employ with no overtime work.  TR 212

On direct examination, Mr. Tousaw testified that he believed that at no time during her employment by defendant, did plaintiff work any overtime hours because he worked closely with her and knew, roughly, what  time she came in and went home.  TR 158. However, on cross examination when asked about plaintiff's arrival and departure times on specific dates, neither he, nor defendant's payroll records, could supply any answers.  It was pointed out by plaintiff's counsel that plaintiff  had written time records for her arrival and departure time for the dates in question.  TR 229-231.

Mr. Tousaw, testified that if employees did work a short overtime period, they would receive compensatory time off for the time period involved.  TR 215.  He also made an agreement with employee Nila Gibson that she would receive compensatory time rather than pay her overtime, and her compensatory time segments would be 1 hour not 1 ½ hours . TR 265, 273.  The court notes that this policy and agreement, appear to be in violation of FLSA §207.  The does nor permit  covered private employers from granting compensatory time to their employees in lieu of overtime compensation.  29 U.S.C. § 207(a)(1); <u>Christensen v.</u>

8

Harris County, 529 U.S. 576, 578-79, 120 S. Ct. 1655, 146 L. Ed.2d 621 (2000). Conversely, states and their political subdivisions are allowed the alternative option of compensating employees by giving them time off work at a rate of one-and-one-half hours for every hour worked, instead of paying overtime. 29 U.S.C. § 207(o )(2) *et seq.* governs this right.

The Act does not require that an employee keep records of hours of his or her employment. Section 211(c), however, mandates the employer to do so.  Defendant's argument that the employee's testimony and overtime work calendars lack a competent and substantial foundation is without merit.   Defendant  cannot use its lack of proper records which the act makes it its duty to keep, to destroy plaintiffs's case on the plea that plaintiff has not produced the complete proofs. Plaintiff cannot produce proofs because defendant does not have  the records which are a charge upon it. One should not be permitted to profit by its own wrongful act. Section 11(c) of the Fair Labor Standards Act, 29 U.S.C.A. § 211(c)

It has been repeatedly held that, unless the employer can provide accurate estimates of hours worked, it is the duty of the trier of fact to draw whatever reasonable inferences can be drawn from the employee's evidence.  Brock v. Seto, 790 F.2d 1446, 1448-49 (9th Cir.1986);  *cert. denied*, sub nom. HoFat Seto v. McLaughlin, 488 U.S. 1040, 109 S. Ct.. 864, 102 L. Ed.2d 988 (1989).

Furthermore, it is  well established that the employee may testify from his or her present memory and recollection alone.  Doo Nam Yang v. ABCL Corp., 427 F. Supp.2d 327, 335 (S.D.N.Y. 2005); Turner v. Human Genome Science, Inc., 292 F. Supp.2d 738, 748 (D. Md.2003) (" 'a *prima facie* case can be made through an employee's testimony

giving his recollection of hours worked ... [and his case] is not to be dismissed nor should recovery for back pay be denied, because proof of the number of hours worked is inexact or not perfectly accurate.' ")(quoting <u>Donovan v. Kentwood Development Co., Inc.</u>, 549 F. Supp. 480, 485 (D. Md.1982));  <u>Mumbower v. Callicott</u>, 526 F.2d 1183 (8th Cir. 1975) (relying on employee's recollection was proper, otherwise employers could benefit from their failure to maintain required records); <u>Shultz v. Hinojosa</u>, 432 F.2d 259 (5th Cir. 1970); <u>Wirtz v. McClure</u>, 333 F.2d 45 (10th Cir. 1964); <u>DeRose v. Eastern Plastics</u>, (W.D Pa. 55) 134 F. Supp. 805, 807; <u>Goldbersg. Graser</u>, (Fla. App. 1979) 365 So.2d 770, 773. Moreover, work need not be performed during scheduled on-duty hours for an employee to receive compensation.  <u>Steiner v. Mitchell</u>, 350 U.S. 247, 256, 76 S. Ct. 330, 100 L. Ed. 267 (1956) (holding that employees must be compensated for "activities performed either before or after the regular work shift ... if those activities are an integral and indispensable part of the principal activities for which covered [employees] are employed").

To prove that an employer has violated FLSA, an employee must also "show the amount and extent of overtime work as a matter of just and reasonable inference." <u>Davis v. Food Lion</u>, 792 F.2d 1274, 1276 (4th Cir.1986), citing <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946). Plaintiff has met that burden under the law with the evidence provided through her own testimony and personal overtime worked calendars. Although a few inconsistencies in their entries were illustrated at the hearing, plaintiff's testimony and  calendars as a whole certainly provide a "just and reasonable inference" as to the overtime hours that she worked.

"When an employer has failed to keep proper records, courts should not hesitate to award damages based on the 'just and reasonable inference' from the evidence presented." <u>Martin v. Tony & Susan Almo Foundation</u>, 952 F.2d 1050, 1052 (8th Cir.), *cert. denied*, 505 U.S. 1204, 112 S. Ct. 2992, 120 L. Ed.2d 869 (1992). <u>Id</u>. at 688, 66 S. Ct. at 1192-93. The employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with" the FLSA. <u>Id</u>.  Because defendant here did not produce admissible records of all the hours plaintiff worked,  plaintiff must produce, and did produce, "sufficient evidence" to show the hours she worked "as a matter of just and reasonable inference." <u>Id</u>.

Therefore, the court finds that plaintiff's estimates of the hours of overtime she worked, the overtime wages she earned but were not paid, and plaintiff's affirmation, is sufficient evidence from which an award of damages under the FSLA may be made.

<u>Joint and Several Liability of Robert Tousaw:</u>

To be liable under the FLSA, one must be an "employer," which the statute broadly defines as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The definition of "employer" is similarly expansive under New York law, encompassing any "person employing any [employee]." N.Y. Labor Law § 2(6). See also N.Y. Labor Law § 651(6).  The Supreme Court has emphasized the "expansiveness" of the FLSA's definition of employer. <u>Falk v. Brennan</u>, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed.2d 406 (1973). Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive

11

interpretation of its provisions so that they will have "the widest possible impact in the national economy." Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir.1984).

The central inquiry in determining whether one qualifies as an "employer" under these generous definitions is "whether the alleged employer possessed the power to control the workers in question, ... with an eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Security Services Ltd., 172 F.3d 132, 139 (2d Cir.1999) (quoting Goldberg v. Whitaker House Cooperative, Inc., 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed.2d. 100 (1961)). Factors to consider when examining the "economic reality" of a particular situation include " 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records,' " though no single factor is dispositive. Id. (quoting Carter v. Dutchess Community College, 735 F.2d 8, 12 (2d Cir.1984)). Employer status does not require continuous monitoring of employees, looking over their shoulders at all times, or any sort of absolute control of one's employees. Control may be restricted, or exercised only occasionally, without removing the employment relationship from the protections of the FLSA, since such limitations on control "do[ ] not diminish the significance of its existence." Donovan v. Janitorial Services, Inc., 672 F.2d 528, 531 (5th Cir.1982); see Brock v. Superior Care, Inc, 840 F.2d 1054, 1060 (2d Cir. 1988); Carter, 735 F.2d at 12- 13.

The "economic reality" test will be used to determine whether Robert Tousaw is

12

plaintiff's "employer" as defined under both state and federal law, as "[t]here is general support for giving FLSA and the New York Labor Law consistent interpretations." Topo v. Dhir, 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004).

Here, the facts demonstrate quite clearly that Robert Tousaw was plaintiff's employer.  He was the alter ego of the defendant Superior Credit Corp. Specifically, he testified that he was the  the president and owner of Superior Credit Corporation TR 132. The record shows that he had the power to hire and fire plaintiff and set her work schedule and wages, maintained employee records, and he ran the day-to-day activities of the business, and no other employee had such powers. Keeping in mind that " '[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages,' " Moon v. Kwon, 248 F. Supp.2d 201, 237 (S.D.N.Y. 2002) (quoting Donovan v. Agnew, 712 F.2d 1509, 1511 (1st Cir.1983)), the court holds that Robert Tousaw was plaintiff's employer under federal and state law, and thus is jointly and severally liable, along with Superior Credit Corporation for the damages arising from the above-discussed violations.

Compensatory Damages Calculation:

During the period plaintiff was employed by defendant, she received two rates of compensation:

   From January 18, 1997 to May 30, 1997, her wage was $8.50 per hour.

   From June 1, 1997 to September 27, 2000 her wage was $9.00 per hour.

   Plaintiff provided a summary of overtime hours worked during the relevant time

13

periods.

The records indicated that between January 18, 1997 and May 30, 1997, plaintiff worked 169.25 hours of overtime. At one-and–a-half the regular rate or $12.75 per hour, plaintiff thereby earned in $2,157.96 overtime wages during that period.  From June 7, 1997 to December 25, 1999, plaintiff worked 1001 hours of overtime at an overtime rate of $13.50 per hour, earning $13,516.60 in overtime wages.  The total overtime compensation earned by plaintiff totaled $15,671.46..

Liquidated Damages under the NLSA:

29 U.S.C. § 216(b) states, in pertinent part:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

Liquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA. Overnight Motor Transportation Co. v. Missel, 316 U.S. 572, 583-84, 62 S. Ct. 1216, 86 L. Ed.2d. 1682 (1942).

Therefore, under FLSA, "double damages are the norm" unless a defendant shows that it acted in good-faith and that its conduct was lawful by providing "plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it."  Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305, 309(S.D.N.Y.1998) (quoting Brock v. Wilamowsky, 833 F.2d 11, 19 [2d Cir.1987] ).

Since defendant has admitted all of the allegations of the complaint by virtue of its default, the court cannot find good faith because this admission means that defendant has acknowledged violating the FLSA.  Obviously, a willful violation of the statute would preclude a finding of good faith. Mclaughlin v. Richland Shoe Co., 486 U.S.128, 133, 108 S. Ct.. 1677, 1681,100 L. Ed.2d 115 (1988).  Consequently, the court finds that defendant is liable to plaintiff  for liquidated damages of $15,671.46, which is the total amount of the unpaid overtime compensation.

Liquidated Damages under New York Law:

Under the New York Labor Law, an employee may be awarded liquidated damages equal to twenty-five percent of the total wages due if the Court finds that the employer's failure to pay the required wages was "willful." N.Y. Lab. L. § 198(1-a). Proof that the defendants acted maliciously or in bad faith is not necessary.  Ayres v. 127 Restaurant Corp., 12 F. Supp.2d 305, 309 (S.D.N.Y.1998).  As it  has been established that defendant's conduct was wilful, the court finds that plaintiff is entitled to a liquidated damages award of $ 3,917.86, representing 25 percent of the total overtime wages owed during the period plaintiff was employed by defendant.

Prejudgment Interest under the FLSA:

Prejudgment interest under the FLSA will not be awarded in this action because a prevailing plaintiff in an action for violations of the Fair Labor Standards Act, may not be awarded prejudgment interest  in addition to liquidated damages inasmuch as that would enable successful plaintiffs to obtain double recovery.  Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 714-16, 65 S. Ct. 895, 905-07, 89 L. Ed. 1296 (1945); Bock v. Superior

15

Care, Inc., 840 F. 2d 1054, 1063 (2d Cir.1988).

Prejudgment Interest under New York Law:

Plaintiff seeks prejudgment interest equal to nine per cent of any amount of unpaid overtime pay she may recover. § 5100 of the New York Civil Law and Rules ("NYCPLR"), does provide for such an award based upon the breach of performance of a contract. The record before the court does not contain an employment contract between the parties hereto, nor is one alleged in plaintiff's complaint.

It is well settled in New York that "absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." Sabetay v. Sterling Drug, Inc., 69 N.Y.2d 329, 333, 514 N.Y.S.2d 290 (4th Dept. 1987);  Murphy v. American Home Products Corp., 58 N.Y.2d 293, 300, 461 N.Y.S.2d 232 (1983); Ingle v. Glamore Motor Sales, Inc., 140 A.D.2d 493, 494, 528 N.Y.S.2d 602 (2d Dept. 1988), aff'd. 73 N.Y.2d 183, 538 N.Y.S.2d 771 (1989)(an employer owes an employee at will no fiduciary duty).  Federal courts have acknowledged this principal of New York Law.  Ellis v. Provident Life & Accident Ins. Co., 3 F. Supp. 2d 399 (S.D.N.Y. 1998), aff'd, 172 F.3d 37 (2d Cir.1999).

As an employee at will, plaintiff had no implied contractual right to continued employment, and thus the relationship could  be terminated at any time by the employer, for virtually any reason.  Murphy v. American Home Products Corp., 58 N.Y.2d 293, 461 N.Y.S.2d 232. (1983)  It is only where a plaintiff can establish the existence of a contract limiting the employer's right of termination, that the principles governing employment at will are inapplicable. Weiner v. McGraw-Hill, Inc., 57 N.Y.2d 458, 461,

16

457 N.Y.S.2d 193 (1982); Weintraub v. Phillips, Nizer, Benjamin Krim & Ballon, 172 A.D.2d 254, 568 N.Y.S.2d 84. (1st Dept.1991).  Having not sued and prevailed in contract, plaintiff is not  entitled  to prejudgment  interest under § 5100 of the NYCPLR, upon the respective amounts awarded to her by the federal court.

Attorneys Fees and Costs:

The FLSA provides for the defendant to pay a successful plaintiff's attorneys' fees and costs 29 U.S.C. § 216(b).

The Fair Labor. Standards Act provides that "[t]he court ... shall, in addition to any judgment awarded to the plaintiff ..., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  The court had no discretion to deny fees to a prevailing plaintiff; its discretion extends only to the amount allowed. An award of fees is mandatory under § 216(b),  Hagelthorn v. Kennecott Corp., 710 F.2d 76, 86 (2d Cir.1983);  Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 415 & n. 5, 98 S. Ct. 694, 697 & n. 5, 54 L. Ed.2d 648 (1978); Weisel v. Singapore Joint Venture, Inc., 602 F.2d 1185, 1191 n. 18 (5th Cir.1979).

The responsibility for determining attorneys' fees falls to the court. Bingham v. Zolt, 66 F.3d 553, 565 (2d Cir.1995). In awarding attorney's fees, the Court must consider whether the hourly rates requested and the time spent are reasonable, and whether the time entries are documented adequately. Soler v. G & U. Inc., 801 F. Supp. 1056, 1060 (S.D.N.Y.1992). In addition, the requesting party in an attorney's fee application must submit contemporaneous time records for work performed, specifying the relevant dates, hours expended, and the nature of the work performed. New York

State Association for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir.1983).

The Court has discretion in determining how many hours were reasonably expended by

the prevailing party. See id. at 1146-47

The court need not, however, "become enmeshed in a meticulous analysis of

every detailed facet of the professional representation." Seigal v. Merrick, 619 F.2d 160,

164 n. 8 (2d Cir.1980). As the Supreme Court has indicated, "a request for attorney's fees

should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437,

103 S. Ct. 1933, 1941, 76 L. Ed.2d 40 (1983). In order to determine reasonable attorneys'

fees, the court must first establish a "lodestar" figure by multiplying the number of hours

reasonably expended during the attorney's representation by a reasonable hourly rate.

McKever v. Vandollen, 681 F .Supp. 999, 1002 (N.D.N.Y. 1988). With respect to the

hours expended, the court must "consider whether the number of hours claimed

reasonably reflect the quantity and quality of the work performed." Fiacco v. City of

Rensselaer, 663 F. Supp. 743, 745 (N.D.N.Y.1987)(quoting Thomas v. Board of

Education, 505 F. Supp. 102, 103 (N.D.N.Y.1981)). If the court determines that a party's

billing reflects excessive or redundant time, then it may reduce the award proportionally.

Hensley, 461 U.S. at 433-34; 103 S. Ct. at 1939-40. With respect to the hourly rate

claimed, the court shall determine whether it is reasonable by ascertaining what "the

normal rate in the legal community is for substantially similar work by competent

practitioners." Fiacco, 663 F. Supp. at 745 (citation omitted). There is, however, a strong

presumption that the lodestar figure represents a reasonable amount.  LeBlanc-Sternberg

v. Fletcher, 143 F.3d 748, 764 (2d Cir. 1998).

With regard to the hourly rate used to calculate the lodestar in lawsuits such as the current one, it must be determined whether  the court should use the rates charged when counsel performed the work ,the historic rate, or the current rate. The practice in this circuit had been to apply the historic rate, or, in the case of protracted litigation, to divide the litigation into two periods, applying the current rate to the recent phase and the historic rate to the earlier phase.   See, New York State Association for Retarded Children v. Carey, 711 F.2d 1136, 1153 (2d Cir.1983). In Missouri v. Jenkins, 491 U.S. 274, 284, 109 S. Ct. 2463, 2469, 105 L. Ed.2d 229 (1989), however, the Supreme Court observed that it is within the discretion of the district court to make "an appropriate adjustment for delay in payment--whether by the application of current rather than historic hourly rates or otherwise." See also Huntington Branch, NAACP v. Town of Huntington, 961 F.2d 1048, 1049 (2d Cir.1992); Chambless v. Masters, Mates, and Pension Plan, 885 F.2d at 1060. In protracted litigation, therefore, a district court has the latitude to depart from the two-phase approach and may calculate all hours at whatever rate is necessary to compensate counsel for delay. See Cowan v. Prudential Ins. Co. of America, 728 F. Supp. 87, 92 (D. Conn.1990), rev'd on other grounds, 935 F.2d 522 (2d Cir.1991).  The lodestar figure in the case at bar will be calculated using the current rate.

In the Northern District of New York, as a general rule, the present hourly rate for work attributable to attorneys with significant experience and numerous years of practice is $210; the hourly rate for work attributable for attorneys with four or more years of experience is $175.  DIRECTV, INC. v. Cruz, 2006 WL 3386774, *2, *3 (N.D.N.Y Nov.

21, 2006).

    After determining the reasonable hourly rates for each attorney, the Court must examine the hours expended by counsel to determine their reasonableness, excluding "excessive, redundant, or otherwise unnecessary" hours. Hensley, 461 U.S. at 434 (1983).

Determination of Lodestar:

    The court has independently reviewed the detailed invoices supporting the fee application. It is clear to the court that the amount of research and time that went into completing relatively straightforward legal tasks was somewhat excessive.  In dealing with surplus hours, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.' " Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.1998) (quoting New York Ass'n for Retarded Children v. Carey, et al, 711 F.2d 1136, 1146 (2d Cir. 1983); Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir.1997) (upholding disallowance of half of associate's hours for time unreasonably expended); American Lung Association v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y.1992) (deducting 40% of plaintiffs' hours, finding that "the use of so many lawyers was excessive and led to duplication of work"). The court concludes that the 48 hours billed for legal research by plaintiff's associate counsel are unreasonable, and it is appropriate to reduce them by one third.

    Plaintiff seeks $33,036.25 in attorneys' fees and $1,388.25 in costs.  Specifically, plaintiff requests compensation for: 19.5 hours for partner Andrews at $200/hr., and 0.75 hours for partner Satter at $200/hr; (the court has raised each of these fees to $210/hour to comply with the current rates in the Northern District), and 166.15 for experienced

associate counsel Maroko at $175/hour.

"If the court determines that certain claimed hours are 'excessive, redundant, or otherwise unnecessary ...' the court should exclude those hours in its calculation of the lodestar." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir.1998). Importantly, "in making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Id.

After reviewing a number of plaintiff's attorneys' entries, it is apparent that associated counsel devoted an unreasonable amount of time researching various issues. Partner Andrews states in his affidavit that neither he nor his partner, attorney Satter, have enhanced their usual hourly billing rates in this case, and voluntarily reduced by 10% percent his time records to ensure that his requests are reasonable. While these attributes are certainly to be expected, they are not necessarily conterminous with reasonableness. Here, Andrew's time entries indicate that associate counsel Maroko devoted an excessive amount of time researching straightforward areas of the law.

 Having reviewed all of Andrew's entries for research, and taking into consideration the voluntary 10% reduction he has already made in the fee application, the court finds that it is proper to exclude 16 hours at $175/hour from the fee application due to excessive research.

 Summary of Attorneys' Fees:

 In sum, then, applying the dis-allowance discussed above, the lodestar figure for plaintiff's counsels is as follows:

21

| Attorney | Hours | Billed | Total |
|----------|-------|--------|-------|
| Ross P. Andrews | 19.05 | $210/hour | $4,007.43 |
| Mimi S. Satter | 0.75 | $210/hour | $157.50 |
| Richard A. Maroko | 150.15 | $175/hour | $26,276.25 |

The total lodestar figure is $30,441.18.

Once the lodestar amount is calculated, there is a strong presumption that this figure constitutes a reasonable amount.  City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 120 L. Ed.2d 449 (1992). The burden falls on the party advocating an adjustment to justify that a change is necessary. United States Football League v. National Football League, 887 F.2d 408, 413 (2d Cir.1989) (citing Lindy Bros. Builders Inc. v. American Radiator & Standard Sanitary Corp., 540 F.2d 102, 118 (3d Cir.1976)). Here, defendants did not seek departure from the lodestar figure. Nor is the court aware of any reason to depart from that reasonable amount. Accordingly, plaintiff is entitled to attorney's fees in the amount of $30,441.18.

Costs and Expenses:

The costs associated with litigation are generally recoverable if they are "reasonable out-of-pocket expenses incurred by the attorney and which are normally charged to fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir.1987).

Here, plaintiff seeks to recover costs of $1,388.25, representing expenses for fees of the Clerk, process serving, court reporter and transcript of the case, exemplified copies and computer research.  They are all properly recoverable. LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998); O'Grady v. Mohawk Finishing Products, Inc.,

1999WL30988 at *8 (N.D.N.Y. January 15, 1999). Defendants also oppose none of them. Accordingly, plaintiffs are entitled to costs in the amount of $1,388.25.

At the close of plaintiff's testimony defendant made a motion for "judgment as a matter of law based on the evidence submitted thus far." TR 125-26.  It is unclear what rule of civil procedure defendant was using to pursue this motion. Fed. R. Civ. P. 50(a) permits a "judgment as a matter of law," but Rule 50(a) is inapplicable to non-jury trials. Pursuant to Fed.R.Civ.P. 52(c), however, a party in a non-jury trial may move for judgment on partial findings if "during a trial without a jury a party has been fully heard with respect to an issue...." The court shall, therefore, treat defendant's motion for judgment as a matter of law as one for judgment on partial findings pursuant to Rule 52(c). In so doing, the court finds that because the court could not make a dispositive finding of fact on the relevant evidence at that time, defendant is not entitled to judgment on its motion. See, Notes of Advisory Committee on Rules, 1991 Amendments, Fed.R.Civ.P. 52(c). Plaintiff's motion for judgment on partial findings is, therefore, without merit.

Accordingly,

December 20, 2006 defendant's motion for judgment on the pleadings is

**DENIED,**

All objections made at the damages hearing regarding the admission of testimony and/or evidentiary exhibits into evidence are **DENIED,**

For the reasons set forth above, the following two **AWARDS** are made, the

**FIRST  AWARD** is to plaintiff against Superior Credit Corp. and Robert Tousaw, jointly and severally, in the amount of $35,268.78, this figure represents the back overtime

wages owed to plaintiff, liquidated damages and costs; the **SECOND AWARD** is against

Superior Credit and Robert Tousaw,  for attorneys' fees of $30,441.18, and costs of

$1,388.25.  The combined awards total is $67,098.21.

**IT IS SO ORDERED**

Date: December 28, 2006
        Syracuse, New York

_____
Howard G. Munson
Senior  U.S. District Judge